**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SUSAN MORRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 11-701 (RMC)** |
| ) | |
| **LISA P. JACKSON, Administrator,** ) | |
| **Environmental Protection Agency,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

Susan Morris is a former employee at the Environmental Protection Agency ("EPA"). She complains of discrimination based on her sex (female) and race (Caucasian), relating to a seven-day suspension and later removal from her job. She also claims that she was subjected to a hostile work environment. Defendant moves (1) to dismiss the suspension and removal claims for failure to exhaust administrative remedies and (2) for summary judgment on the hostile work environment allegation for failure to state a claim. As explained below, the motion will be granted with one exception — the suspension claim was, in fact, exhausted and will not be dismissed.

**I.  FACTS**

Ms. Morris is a career federal employee who spent the last ten years with EPA in a GS-15 level position. She joined EPA's Office of Civil Rights in 2001 as a Team Leader for the agency's Workforce Diversity and Employment Program. She then became an Assistant

Director with the title "Equal Employment Manager."  Ms. Morris alleges that she received

outstanding ratings from her supervisors as well as various awards, including a Bronze Medal in

2004 and an Award for Superior Accomplishment in 2006.

In 2005, a contractor produced Management Directive 715, which was critical of

EPA's personnel policies, procedures and practices.  Ms. Morris certified the report and

submitted it to EPA's Director of Civil Rights at the time, Karen Higginbotham. Ms. Morris

alleges that "because this report raised issues that Ms. Higginbotham believed cast doubt on her

leadership of EPA's Office of Civil Rights, and that of management as a whole . . . she began a

campaign to harass plaintiff and drive her from the agency and from federal employment."

Compl. ¶ 9.

Ms. Morris further contends that Ms. Higginbotham and Ray Spears, Deputy

Chief of Staff at EPA, both of whom are African American, harassed her because she is White.

*Id*. ¶ 10.  She claims that they created a hostile work environment as follows:

> Beginning in 2005 and continuing into 2010, Ms. Higginbotham
> . . . [and Mr. Spears] engaged in a concerted effort to harass and
> discredit  plaintiff by, among other things:  (a) undercutting –
> indeed, usurping — her authority with subordinates though (sic)
> prevarication, deceit, threats, and racist remarks; (b) initiating
> and/or hyping knowingly false and scurrilous allegations of
> misconduct and ethics violations and substance abuse by plaintiff,
> and subjecting her to a year-long Inspector General's investigation
> (2006-2007), in which she was ultimately exonerated; (c) inciting
> employee groups to attack plaintiff on false claims of bias and
> misconduct; (d) falsely charging plaintiff with insubordination
> when she merely responded to false allegations made against her
> and mistreatment she was made to endure as a result of Ms.
> Higginbotham's and Mr. Spears's actions; (e) withholding acclaim,
> visibility, and recognition from plaintiff; (f) denying her
> opportunities to exercise authority to the same degree as her peers;
> (g) unduly monitoring plaintiff's time and attendance; and (h)

refusing to submit MD-715 reports to EEOC [the Equal
Employment Opportunity Commission] which plaintiff has
prepared and certified after 2005.

*Id*.

On April 29, 2008, Ms. Morris was suspended without pay for seven days, from

May 5-11, 2008.  She asserts that the suspension was due to a bogus charge that she engaged in

insubordination.

Ms. Morris filed formal complaints of discrimination with the Department of

Energy Office of Civil Rights, acting as EEO designee for EPA, on May 19, 2008 and January 8,

2009, and she amended them on April 21, 2009.  Def.'s Mot. to Dismiss [Dkt. # 6], Ex. 1 (Notice

of Acceptance/Dismissal of Formal Complaint of Discrimination).  On June 19, 2009, the

investigating agency issued a notice of acceptance for investigation of claims.  The accepted

claims included, among other things, whether Ms. Morris was discriminated against due to her

gender and race based on (1) harassment and a hostile work environment from January 24, 2007

to May of 2008 and (2) a seven day suspension, from May 5-11, 2008.  *Id.*

On March 23, 2010, Ms. Higginbotham issued a notice of proposed removal from

federal service to Ms. Morris, charging insubordination, wrongful disclosure of confidential

personal information of another employee, misuse of supervisory authority, and inappropriate

statements made in work product.  *Id.*, Ex. 6 (Notice of Proposed Removal).  The next day, Ms.

Morris filed a whistleblower complaint with the Office of Special Counsel.  *Id.*, Ex. 7 (OSC

Complaint).

On September 8, 2010, Ms. Morris filed with the Merit Service Protection Board ("MSPB") a "mixed case" appeal of the decision to remove her from federal service.[1]  MSPB stayed the removal to allow the Office of Special Counsel to complete its investigation of the whistleblower complaint.  *See id.*, Ex. 9 (MSPB Decision) at 1.  Finding that the Office of Special Counsel might resolve the issue between the parties, MSPB dismissed the appeal without prejudice, but indicated that the appeal would be automatically refiled after the stay was lifted. *Id*. at 3.

Ms. Morris returned to her job while the stay was in place.  When the stay expired, EPA again removed Ms. Morris from her position, effective January 22, 2011.  On January 24, 2011, the mixed case appeal was refiled with MSPB and a hearing was scheduled. On April 8, 2011, Ms. Morris filed this lawsuit and withdrew her appeal before the MSPB.  *Id*., Ex. 13 (Notice of Withdraw of Appeal).  As a result, MSPB dismissed the appeal with prejudice. *Id*., Ex. 14 (MSPB Apr. 21, 2011 Decision).  On May 9, 2011, the EEOC also dismissed Ms. Morris' administrative complaint because this suit had been filed and it advances the same claims.  *Id*., Ex. 15 (EEOC Order of Dismissal).

The Complaint alleges that EPA subjected Ms. Morris to a seven-day suspension, a hostile work environment, and removal from her job based on gender and race discrimination

---

[1] Covered federal employees who are removed from service may appeal their removal to the MSPB under the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.).  A "mixed case" appeal is an appeal to the MSPB alleging that the removal was due both to a prohibited personnel action under the CSRA and discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.  *See* 5 U.S.C. § 7702(a)(1)(B); 5 C.F.R. § 1201.151(a)(2); 29 C.F.R. § 1614.302(a)(2).

in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.[2]  EPA

moves to dismiss the claims relating to the seven-day suspension and termination due to failure

to exhaust administrative remedies and moves for summary judgment with regard to the hostile

environment claim.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Motions for failure to exhaust administrative remedies are properly analyzed

under Federal Rule of Civil Procedure 12(b)(6).  *Hairston v. Tapella*, 664 F. Supp. 2d 106, 110

(D.D.C. 2009).  Because failure to exhaust is an affirmative defense, the defendant bears the

burden of proof on the issue.  *Id.*  Once a defendant has met its burden, the burden shifts to the

plaintiff to make the case that dismissal is not warranted.  *Bowden v. U.S.* 106 F.3d 433, 437

(D.C. Cir. 1997).

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).

A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

---

[2] Ms. Morris also alleged (1) reassignment of duties based on gender and race discrimination; (2) age discrimination; and (3) retaliation.  Defendant has moved to dismiss these claims, or for summary judgment, and Ms. Morris has failed to respond.  Her argument is confined to her claims regarding removal, suspension, and hostile work environment.  "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002); *see also Jones v. Air Line Pilots Ass'n,* 713 F. Supp. 2d 29, 38-39 (D.D.C. 2010) (citing *Hopkins*).  Since Ms. Morris abandoned and waived the claims regarding reassignment of duties, age discrimination, and retaliation, they will be dismissed.

citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in

fact." *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth

in a complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding a motion under

Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits or incorporated by reference, and matters about which the court may take

judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall

be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted

against a party who "after adequate time for discovery and upon motion . . . fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

#### A. Exhaustion of Claim Regarding Removal

Title VII complainants must exhaust administrative remedies before filing suit in federal court.  *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir.  2010); *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (citing *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972)).  Similarly, exhaustion of administrative remedies is a prerequisite under the Civil Service Reform Act.  *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996).  When a claim presents a "mixed case," involving charges of discrimination under Title VII and prohibited personnel practices under the Civil Service Reform Act, a federal employee can exhaust administrative remedies by presenting her claim either to the agency's EEO office or to the MSPB.  *Hamilton v. Geithner*, No. 10-5419, slip op. at *7 (D.C. Cir. Jan. 17, 2012).  Once a federal employee chooses a particular administrative route, she must exhaust the remedies in that forum.  *Economou v. Caldera*, 286 F.3d 144, 149 (2d Cir. 2002).  The MSPB has 120 days to render a decision.  5 U.S.C. § 7702(e)(1); 29 C.F.R. § 1614.302(d)(1)(i).  "A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a

claimant fails to exhaust administrative remedies and may not thereafter seek redress from the courts." *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995).

A voluntary dismissal cannot be used to circumvent the requirement of exhaustion. *See, e.g., Noisette v. Geithner*, 693 F. Supp. 2d 60, 67-68 (D.D.C. 2010) (plaintiff failed to exhaust discrimination claim under Title VII when he withdrew his claim from the EEOC before the EEOC decision deadline had elapsed); *Moore v. Jewel Food Stores*, 1998 WL 102639, *4 (N.D. Ill. Mar. 3, 1998) (plaintiff failed to exhaust state-law discrimination claim when she voluntarily dismissed his case before the state human rights commission). The purposes of exhaustion are to give the charged party notice of the claim, to narrow the issues for prompt adjudication, *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976), to give the agency a chance to resolve the matter, and to avoid burdening the courts unnecessarily. *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996).

Ms. Morris chose the MSPB as the administrative forum for her complaint regarding removal from federal service. Because Ms. Morris' appeal was refiled on January 24, 2011, MSPB had 120 days — until May 24, 2011 — to render its final decision. Ms. Morris did not give it time to do so. Instead, on April 8, 2011 she filed suit in this Court and abandoned her administrative case. By doing so, she failed to exhaust administrative remedies with regard to her removal claim. The claim must be dismissed without prejudice.

### B.  Exhaustion of Claim Regarding Suspension

Defendant also contends that Ms. Morris failed to exhaust administrative remedies relating to her suspension because she filed her formal complaint before the informal EEO counseling process was completed. While Defendant correctly points out that Ms. Morris filed

-8-

her complaint before finishing the counseling process, it does not meet its burden of showing a failure to exhaust.  Before filing a Title VII lawsuit, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  The failure to do so constitutes failure to exhaust administrative remedies. *Drewrey v. Clinton*, 763 F. Supp. 2d 54, 62 (D.D.C. 2011).[3]  The regulation does not require that a plaintiff meet with a counselor within 45 days, just that she initiate contact within that time. *Boone v. Clinton*, 675 F. Supp. 2d 137, 143 (D.D.C. 2009).  The counselor is required to hold an initial counseling session, to advise the complainant of certain rights, to conduct counseling activities, and to hold a final interview.  29 C.F.R. § 1614.105(b)(1), (c), (d).  If the matter has not been resolved through  counseling, the EEO Counselor informs the aggrieved person of the right to file a formal complaint.  *Id*. §§ 1614.105(d), 164.106(b).  In order to exhaust administrative remedies, a complainant must file a formal complaint; merely presenting a claim in an EEO counseling session does not constitute exhaustion.  *See Hamilton*, slip op. at *8 (a plaintiff "cannot rely on an EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint").

After filing a written complaint, the employee may file a civil action after the agency issues an adverse final decision or 180 days elapse without a decision, whichever happens first.  42 U.S.C. § 2000e-16(c).  Title VII is remedial in nature; the time limits are imposed are not mere technicalities, but instead are imposed to insure that employers receive notice of

---

[3] The equitable doctrines of waiver, estoppel, and tolling may apply in extraordinary circumstances. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Williams v. Munoz*, 106 F. Supp. 2d 40, 43 (D.D.C. 2000).

complaints and have the opportunity to resolve an issue before litigation. *Hairston v. Tapella*, 664 F. Supp. 2d 106, 111 (D.D.C. 2009).

Although Ms. Morris proceeded with her claim in a sequence that is different from the sequence contemplated by the regulations spelled out above, she nonetheless exhausted administrative remedies regarding the suspension claim. On April 10, 2008, the EEO counselor interviewed Ms. Morris regarding her claim of harassment. Then, on April 29, 2008, Ms. Morris was suspended. She filed a formal EEO complaint several days later — on May 19, 2008. The formal complaint included both the harassment and the suspension claim, and constituted an initiation of the counseling process well within the 45-day period that the regulation requires. Thereafter, Ms. Morris asked that EEO counseling be held in abeyance while she grieved the suspension through EPA's Administrative Grievance process. Pl.'s Opp., Ex. 1 (EEO Counselor's Report) at 2 n.2. Later on, the EEO counselor resumed her counseling activities and conducted a final interview on July 14, 2008. Def.'s Mot. to Dismiss, Ex. 1 (Notice of Acceptance/Dismissal of Formal Complaint of Discrimination) at 2. The EEO counselor was unable to resolve the issues and sent a notice of right to file an EEO complaint. *Id*. On June 19, 2009, the investigating agency accepted the harassment and suspension claims for investigation. *Id*. at 3. The agency noted that after the EEO Counselor sent the notice of right to file, a claimant ordinarily would have a 15-day period to file a formal complaint, but in this case the agency deemed Ms. Morris to have already filed the formal complaint. The agency considered the May 19, 2008 complaint, though filed before the counseling process was concluded, to be a timely filed complaint. *Id*. at 2. Because Ms. Morris initiated the EEO counseling process and timely

filed a formal complaint, she exhausted administrative remedies regarding her suspension and her related Complaint allegations will not be dismissed.

### C.  Hostile Work Environment

Defendant moves for summary judgment with regard to Ms. Morris' harassment claim.  The Supreme Court has determined that the language of Title VII is not limited to economic or tangible discrimination.  "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB  v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted). However, "Title VII does not provide a cause of action for 'ordinary tribulations in the workplace.'" *Faragher*, 524 U.S. at 788.  To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank,* 477 U.S. at 65).

In determining whether a hostile work environment claim is substantiated, a court looks at all the circumstances of a plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance.  *Harris*, 510 U.S. at 23.  The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a

"general civility code." *Faragher*, 524 U.S. at 788.  Consequently, "'mere utterance of an . . .

epithet which engenders offensive feelings in an employee' does not sufficiently affect the

conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477

U.S. at 91).  Further, "simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment." *Faragher*, 524 U.S. at 778.  A plaintiff must demonstrate that the alleged events

leading to the hostile work environment were connected, since "discrete acts constituting

discrimination or retaliation claims . . . are different in kind from a hostile work environment

claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*,

290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*, 536 U.S. 101,115-16 (2002)).  "Workplace

conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270

(2001).  Further, the alleged harassment must be linked to the claimed ground for discrimination.

*Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 164 (D.D.C. 2010).  A plaintiff must show that

the harassment occurred *because of* her protected status. *Hussain v. Gutierrez*, 593 F. Supp. 2d

1, 7 (D.D.C. 2008).  To survive summary judgment, a plaintiff must offer evidence of pervasive

harassment that affected a term, condition, or privilege of her employment, "which a reasonable

jury could find causally connected to his [protected status]." *Williams v. Chertoff*, 495 F. Supp.

2d 17, 41 (D.D.C. 2007).

   For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C.

Circuit held that statements by three employees over a six-month period telling a plaintiff to "go

back where she came from," separate acts of yelling and hostility, and allegations that the

plaintiff was not given the type of work she deserved, were isolated instances that did not rise to

the level of severity necessary to find a hostile work environment.  *Id.* at 416-17.  Similarly, in

*Singh v. United States House of Representatives*, 300 F. Supp. 2d 48, 54-57 (D.D.C. 2004), this

Court found that a plaintiff's allegations that her employer humiliated her at important meetings,

screamed at her in one instance, told her to "shut up and sit down" in one instance, and was

"constantly hostile and hypercritical" did not amount to a hostile work environment, even though

these actions may have been disrespectful and unfair.

      Ms. Morris alleges that Ms. Higginbotham and Mr. Spears engaged in a concerted

effort to harass her because she certified Management Directive 715 that was critical of EPA's

personnel policies, procedures, and practices.  *See* Compl. ¶ 9.  She claims that Ms.

Higginbotham and Mr. Spears harassed her by:

> (a) undercutting her authority with subordinates though (sic)
> prevarication, deceit, threats, and racist remarks;
> (b) falsely accusing her of misconduct, ethics violations, and
> substance abuse, and subjecting her to an Inspector General's
> investigation;
> (c) inciting employees to attack plaintiff on false claims of bias and
> misconduct;
> (d) falsely charging plaintiff with insubordination;
> (e) withholding recognition for successful job performance;
> (f) denying her opportunities to exercise authority;
> (g) unduly monitoring her time and attendance; and
> (h) refusing to submit reports that plaintiff prepared and certified.

*See* Compl. ¶ 10.  In response to Defendant's motion, Ms. Morris supplemented these

allegations.  For example, she also contends that she was denied the opportunity to be the Acting

Deputy Director; her supervisor attempted to move her to a dark and dingy office; she had to

report daily to an Acting Deputy, unlike other Assistant Directors; she was left out of meetings;

she was required to do work outside her area of responsibility; she had to give the bookcase she

ordered to her supervisor; she was falsely accused of having a drinking problem; and she was discredited, chastised, and mistreated in staff meetings. *See* Pl.'s Opp. at 9-13 & Ex. 3 (Morris Decl.) at 3-4.

While Ms. Morris recites this litany of perceived slights, she presents no evidence that the incidents are connected to one another or that they are connected to her gender or race. In fact, she alleges that the harassment was related to her certification of a Management Directive 715 that had criticized EPA. *See* Compl. ¶ 9. Because the alleged incidents are not alleged to be based on gender or race, they do not constitute discriminatory harassment in violation of Title VII. Moreover, the alleged incidents are insufficiently severe or pervasive to alter the conditions of employment. Accordingly, Defendant is entitled to summary judgment on the claim of a hostile work environment.

## IV.  CONCLUSION

The Court grants in part and denies in part Defendant's motion to dismiss or for summary judgment [Dkt. #6] as follows:  (1) the claim regarding termination of employment is dismissed without prejudice due to failure to exhaust administrative remedies; (2) the claims regarding reassignment of duties, age discrimination, and retaliation are dismissed; (3) summary judgment is granted in favor of Defendant on the hostile work environment claim; and (4) the claim regarding the seven-day suspension remains.  A memorializing Order accompanies this Memorandum Opinion.

Date: February 6, 2012                    _____/s/_____
                                          ROSEMARY M. COLLYER
                                          United States District Judge