UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN M. MORRIS,

    Plaintiff,

    v.

ANDREW WHEELER, in his official
capacity as Acting Administrator, U.S.
Environmental Protection Agency,

    Defendant.

Civil Action No. 11-701 (JEB)

## MEMORANDUM OPINION

After Plaintiff Susan Morris prevailed in a jury trial, this Court issued an Opinion granting her a substantial award of attorney fees and costs but denying her other equitable relief. Dissatisfied with that result, Morris asks the Court to reverse itself and grant her the relief denied during the last round. Defendant, the Environmental Protection Agency, has now chimed in as well, seeking an order striking the jury's compensatory-damages award. Because neither party raises any issue that could not have been raised — or was not in fact raised — previously, and because such arguments in any event lack merit, the Court will not disturb its prior Opinion.

**I.    Background**

Much ink has been spilled recounting the facts and circumstances of this litigation. See, e.g., Morris v. Wheeler, 2018 WL 6308785 (D.D.C. Dec. 3, 2018); Morris v. Pruitt, 308 F. Supp. 3d 153 (D.D.C. 2018). The Court thus offers just a few words to set the stage.

Morris, a longtime EPA employee, was suspended and later fired over allegations of misconduct. She subsequently sued the Government claiming that her suspension and termination were racially discriminatory. See ECF No. 4 (Am. Compl.). The case went to trial

on just the suspension claim, and the jury found for Plaintiff in the amount of $25,000. See ECF No. 73 (Clerk's Judgment). She then moved for various forms of equitable relief, including expungement and backpay as to the suspension, reinstatement and backpay as to the subsequent termination, and attorney fees and costs. See ECF No. 95 (Mot. Equitable Relief). The Court granted her attorney fees but denied her other requests. See Morris, 2018 WL 6308785, at *1. It explained that, when the defendant shows that it would have taken the same employment action in the absence of discrimination — what courts have called the "same action" defense — Title VII precludes a court from awarding certain categories of equitable relief, like backpay and reinstatement. Id. at *3 (discussing 42 U.S.C. § 2000e-5(g)(2)(B)). Finding that the Government had indeed shown that it would have suspended Plaintiff absent racial considerations, the Court thus denied her backpay and expungement of the suspension. Id. at *3–6. (Relief related to the termination was denied because it depended on the success of her claim for relief on the suspension and for independent reasons not relevant here.)

Challenging this conclusion, Morris has filed a Motion to Alter and Amend the Judgment. See ECF No. 106 (Mot.). The Government has opposed and cross-moved to strike the jury's award of compensatory damages. See ECF No. 108 (Cross-Mot.). No one seeks reconsideration of the fees issue.

## II. Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry. The Court must apply a "stringent" standard when evaluating Rule 59(e) motions. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted). Critically, Rule 59(e) "is not a vehicle to present a new legal theory that was available prior to judgment." Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012).

**III. Analysis**

The Court begins with Plaintiff's Motion before turning to the Government's.

A. Morris's Motion to Alter and Amend

Plaintiff offers three related reasons why the Court should alter and amend its Judgment: (1) Defendant waived the "same action" defense; (2) the Court's "same action" finding conflicts with the way the parties have litigated this case; and (3) its "same action" finding is inconsistent with the jury's determination. Each is addressed in turn.

1. *Forfeiture*

While Morris's first objection is framed as one about waiver, it is more properly considered a forfeiture argument. See United States v. Olano, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). She says, in short, that the Government never properly asserted the "same action" defense, so the Court's prior decision applying the defense was erroneous. See Mot. at 1–2. This argument holds little water. For starters, Defendant clearly asserted the defense in its opposition to the motion for equitable relief. It explained that, because the Court had instructed the jury that it could find for Plaintiff if discrimination was "a motivating factor in the suspension," the jury's $25,000 verdict for Morris did not necessarily mean she should receive the equitable relief of voiding the suspension. See ECF No. 97 (Opp. to Mot. Equitable

3

Relief) at 6. Citing the Court of Appeals's decision in Porter v. Natsios, 414 F.3d 13 (D.C. Cir. 2005) — a "same action" case — it maintained that "the evidence at trial showed that the suspension would have been imposed even without supposed discrimination." Opp. to Mot. Equitable Relief at 8 n.2; see also id. at 6–7.

This dooms Plaintiff's current Motion. As mentioned, Rule 59 is not an avenue for a party "to present a new legal theory that was available prior to judgment." Patton Boggs, 683 F.3d at 403. If Morris believes that the Government should have articulated the defense at another phase of the litigation, she had the opportunity to point that out in her reply brief in support of her motion for equitable relief. Having not availed herself of that opportunity, see generally ECF No. 100 (Reply Mot. Equitable Relief), she cannot now assert such an argument. See Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993) ("[T]his Court has recognized that a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."); see also Solomon v. Vilsack, 763 F.3d 1, 13 (D.C. Cir. 2014) (explaining that parties can "forfeit[] forfeiture argument[s]").

Perhaps Morris did not make the argument before because the Government did raise the defense earlier in this litigation. In its Answer, it stated that the relief Plaintiff sought "may be further limited by 42 U.S.C. § 2000e-5(g)(2)(B)," referring to the Title VII provision setting out the same-action defense. See ECF No. 15 (Answer), ¶ 24. The bottom line is that, while Defendant might have made its intentions clearer, it did not forfeit the ability to argue at the equitable-relief stage that it would have taken the same action regardless of any discriminatory motivation.

In any event, the Court is hard-pressed to see how Plaintiff is prejudiced from EPA's ostensible failure to raise the matter earlier. The evidence supporting or opposing a claim that

4

discrimination motivated an adverse employment action substantially overlaps with the evidence that the adverse employment action would have occurred absent any discriminatory motivation. Both generally turn, as this case did, on whether the employer's proffered justification for the action was partially or entirely pretextual. See Frederick T. Golder & David R. Golder, Labor and Employment Law: Compliance and Litigation § 4:40 (3d ed. 2018) (explaining that both arguments may turn on "evidence of pretext and the McDonnell Douglas framework").

Morris's objection rings especially hollow in light of her subsequent argument, which the Court will turn to next, that she understood this case to be litigated on a but-for-causation theory rather than a mixed-motive theory. Under that view, the question at the heart of this case was whether race was a determinative factor in Morris's suspension. The same-action defense addresses the same question, just with the burdens reversed — viz., whether race was not a determinative factor in the suspension. All along then, the Government, at least under Plaintiff's view of the case, was seeking to show that it would have suspended Morris regardless of her race. See, e.g., ECF No. 31 (MSJ) at 7–9 (explaining that Higginbotham suspended her for insubordination and arguing that this justification was not pretextual); ECF No. 79 (Motion for JMOL) at 1–2 (arguing that "the evidence made clear" that suspension was based on supervisor's "rigorous analysis of the evidence, his own direct observation of Plaintiff's insubordination, and his personal knowledge of Plaintiff's prior misconduct"). Morris had ample opportunity and incentive to rebut such arguments. For lack of conceivable prejudice, therefore, this argument also fails.

### 2. *This Litigation*

Plaintiff's second assertion, which the Court has previewed, is that this case was litigated on a but-for-causation theory rather than a mixed-motive theory. See Mot. at 3–5. Because the

same-action defense does not apply in but-for cases, she says, the previous Opinion must be wrong. The Court sees things differently. Much of Plaintiff's case has not distinguished between causation standards. See Am. Compl., ¶ 19 (alleging merely that defendant "discriminated against plaintiff on the basis of her race"); ECF No. 84 (Opp. to Mot. for JMOL) at 2 (explaining that evidence supported jury's conclusion that suspension was "motivated by Ms. Morris's race"); see also Morris v. McCarthy, 825 F.3d 658, 670–72 (D.C. Cir. 2016) (holding that there was sufficient evidence for "reasonable jury to find that her suspension was motivated by [racial] bias"). Where causation standards came up, Morris asserted claims under both. Compare ECF No. 36 (Opp. to MSJ) at 25–27 (appearing to advance but-for claim), with id. at 28–29 (asserting mixed-motive claim). Morris points out that arguments about pretext and the McDonnell-Douglas framework dominated the many rounds of briefing in this matter. See Mot. at 3–4. True enough. But, as the Court has said, mixed-motive cases also often revolve around pretext. See Golder, Labor and Employment Law § 4.40; see also Porter, 414 F.3d at 20 (upholding motivating-factor instruction that "referred to a pretext theory").

All that aside, even if Plaintiff had at one point litigated the case as a but-for one, she stopped doing so when she accepted without objection the Court's mixed-motive jury instruction. See Trial Tr. (11/1/17 PM) at 2:5–22; Trial Tr. (10/31/17 PM) at 108:24–114:16. Indeed, Morris did not just accede to that instruction silently. She relied on it in a crucial part of her closing argument. She asked the jury to envision a scale of justice and to place on Plaintiff's side "all the evidence that support[s] the contention that her race was <u>a motivating factor here, a motivating factor, not the, but a</u>, as the Judge said." Trial Tr. (11/1/17) at 102:6–9 (emphasis added). Any argument that this was just a but-for-causation case went out the window when Plaintiff declined to object to the mixed-motive instruction and then relied on that instruction in

her closing. She could have instead made the tactical decision to insist on a but-for instruction. Although this would have made victory before the jury harder, it would have insulated her from any adverse post-trial rulings by the Court on equitable relief.

       3.   *The Jury Verdict*

Last up is Plaintiff's argument that the same-action finding is inconsistent with the jury verdict because the Court, in fact, gave the jury a but-for-causation instruction. She has no more luck on this swing than on the last two. As explained, the parties expressly discussed the proper standard, the Court ultimately decided to give the mixed-motive instruction, and Morris relied on that instruction in her closing. But wait, she says: The Court told the jury that the dispute centered on whether she was "suspended because of her race," a phrase that connotes but-for causation. See Mot. at 5 (quoting Trial Tr. (11/1/2017) at 83:20–21) (emphasis added). Yet immediately after that sentence, it explained what "because of" means here — namely, "Ms. Morris need not show that race was the only reason for the EPA's actions, but she must prove that her race was a motivating factor in her suspension." Trial Tr. (11/1/2017) at 83:21–23 (emphasis added). This was unquestionably a mixed-motive instruction.

Indeed, there is no conflict between the "because of" language and the "motivating factor" instruction. Title VII provides that certain employment actions taken "because of" race are "unlawful employment practices." See 42 U.S.C. § 2000e-2(a)(1). As relevant here, the motivating-factor provision "establishes the causation standard for proving a violation" of § 2000e-2(a)(1). See Univ. of Tex. SW Med. Cent. v. Nassar, 570 U.S. 338, 355 (2013). So, one way for a plaintiff to prove that she suffered an adverse employment action "because of" race in violation of § 2000e-2(a)(1) is to show that race "was a motivating factor" for that action. See 42 U.S.C. § 2000e-2(m). The origin of the motivating-factor standard confirms this

7

understanding. Here's how the Court explained it in Porter: "The 'mixed motive' framework was established by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), in recognition that the statutory phrase 'because of' does not mean 'solely because of,' id. at 241." 414 F.3d at 18 (emphasis omitted). The bottom line is that the jury's verdict does not establish that Morris's race was the but-for cause of her suspension, so as to preclude the same-action finding at the equitable-relief stage.

B. EPA's Motion to Strike

Not content either, the Government has moved to strike the jury's $25,000 compensatory-damages award on the ground that damages may not be awarded in cases where the Government establishes the same-action defense. The Court has the same answer it had for Plaintiff: too late. If Defendant had wanted to strike the jury's damages award on account of the same-action defense it raised during the equitable-relief stage, it had ample opportunity to say so then. Having failed to mention it in that round of briefing, it cannot come back to the Court now. See Kattan by Thomas, 995 F.2d at 276. In any event, courts have upheld compensatory-damages awards notwithstanding their determination at the equitable-relief stage that the defendant would have taken the same action without a discriminatory motive. See Porter v. USAID, 240 F. Supp. 2d 5, 6 (D.D.C. 2002) (finding that defendant would have taken same action but declining to disturb jury's damages award), aff'd, Porter, 414 F.3d at 21; see also Fogg v. Gonzales, 492 F.3d 447, 456–59 (D.C. Cir. 2007) (Henderson, J., concurring) (explaining that same-action defense is "limitation on equitable relief"). At the least, where the Government does not request a same-action instruction be presented to the jury (and does not request an order striking compensatory damages at the equitable-relief stage), the Court should not now undo the jury's finding.

## IV. Conclusion

For these reasons, the Court will deny the Motions.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 13, 2019